And we'll turn to the last case on our day calendar today, USA v. Townsend. Yes, sir. Thank you. Good morning, your honors. May it please the court. Daniel Habib, federal defenders for Mr. Townsend. The district court committed procedural error by treating Townsend's prior New York State conviction for criminal sale of a controlled substance in the fifth degree as a controlled substance offense under the guidelines. As this court held in Harbin v. Sessions, the New York statute is indivisible and it criminalizes the sale of HCG, a substance that is legal under federal law and the laws of 40 states. Because the categorical approach requires the adjudicator to presume that Mr. Townsend sold HCG, the New York offense sweeps more broadly than its federal counterpart and may not be used as a guidelines predicate. The district court's contrary position in this case, namely that a controlled substance under the guidelines is anything that a state calls a controlled substance, is irreconcilable with a quarter century's worth of Supreme Court jurisprudence, beginning with Taylor and continuing through last term's decision in Esquivel-Quintana. It also conflicts with the holding of the only three circuits to have addressed the question, the 5th, 8th, and 9th, all of which have held that the term controlled substance in the guidelines means substance controlled by federal law. And that's in a different section of the guidelines though, right, for all three? The 8th Circuit's decision, Sanchez-Garcia, actually concerns both 2L1.2 and 4B1.2, but the text of the two guideline provisions is identical and the government hasn't argued that there's a material difference between them. More important, the principles of those decisions is that generic, that federal terms in the guidelines take generic definitions that are uniform and do not depend on the vagaries of state law. That position flows from Taylor, and it also flows from this Court's decision in Savin which says that absent a plain indication to the contrary, the guidelines will not be interpreted to incorporate the laws of other sovereigns. That's consistent with the guidelines' objective of promoting sentencing uniformity. I would think that from the point of view of the federal defenders and your clients generally, and I recognize that you're not here to address your clients generally. You have one client, but I'm interested in your view of how the guidelines, the allegedly advisory guidelines work in a case like this. What is it that a district court might do or might have done in these circumstances to effectively reserve to itself ultimately the discretion as to the sentence to be imposed? Your argument seems to me to be asking us to apply a relatively rigid rule which in the long run is not going to be in the interest of your general clients. I think the answer to the Court's question, and I'll confine myself to Mr. Townsend, comes from this Court's decision in Janow. The guidelines, notwithstanding their advisory nature, entail a categorical approach. And a district court must strictly observe the categorical approach and correctly calculate the guideline range. You want the district courts, and I understand the case you're invoking, you think that it's in the interest of defendants generally to have district courts apply guidelines strictly? Well, I think... Doesn't it... Is it the case that the Court... Excuse me. I'm sorry. Go ahead. Let me ask the question and let him answer my question. Thank you, Your Honor. Again, with respect, confining my answer to Mr. Townsend, I think Janow dictates that the guideline calculation be done strictly. Yes. But, of course, under 3553, the district court has substantial discretion to vary from the guideline range. And as Janow indicates, in this case, the... So explain to us what you think is the... Mechanically, really, for the district court. The district court goes through this exercise with the help of the probation office, right? Right. And it recognizes or purports to recognize the applicability of the guidelines and the effect of the guidelines. Then it steps back and says what? Or what could it do in these circumstances? Then the district court considers the guideline range under 3553A4 along with the other 3553 factors. And if the court's concern is how can we accommodate Mr. Townsend's factual conduct, the answer, again, comes from Janow. And similarly, similar reasoning in this Court's decision in Beardsley several years ago, an opinion of Judge Lynch's. The answer is that the district court can consider Mr. Townsend's factual conduct if proved by competent evidence, which I might add has not been submitted at this juncture, but can consider Mr. Townsend's factual conduct under 3553A1. That's the approach dictated by Janow. In this case, the government has not tendered any record evidence to prove what Mr. Townsend did or did not do. Now, Judge Lynch in that opinion said in this instance, therefore, the sentencing court remained free to impose a sentence outside the guidelines if it found that it that result appropriate under all the circumstances. That's right. So it goes through the kabuki theater of the application of the guidelines, and then we revert to the district court, and the court having performed its kabuki functions can then exercise its discretion. Again, of course, the Supreme Court said in Gall that a district court is required to correctly compute the guideline range. A failure to do so is significant procedural error, and it's the error we've asserted here. But more to the point, Judge Cabranes, the categorical approach is not a lawyer's trick. It's not an artifice. It flows from constitutional, practical, and equitable principles, as the Supreme Court laid out in Taylor. In this case, proving Mr. Townsend's factual conduct related to this case would, one, raise the constitutional concern that a judge was now relying on facts not found by a jury or admitted by Mr. Townsend. Two, it would raise the practical concern of unearthing the facts of conduct that occurred in 2004. And it would raise the equitable concern that Mr. Townsend was being deprived of the benefit of his plea bargain. Frequently, we see New York State defendants charged with a higher degree sale offense and plead down to fifth degree, where they're admitting only the sale of a controlled substance simpliciter. And so with respect, I understand the Court's concern, but the Supreme Court has told us this is a necessary step. And the step isn't merely technical. There are sound underlying reasons first articulated in Taylor for that step. I also want to emphasize the following. It's not necessary for this Court to reverse, for this Court to determine what controlled substance means for all purposes. If this Court follows the approach that the Supreme Court took last term in Esquivel-Quintana, it is sufficient for Mr. Townsend to show that the New York term controlled substance is non-generic. There is something special about the New York term. And he's done that. He's shown that it encompasses HCG, a substance that's legal under federal law and legal under the laws of 40 states. Just as Esquivel-Quintana, quote, left for another day the broader contours of the definition of sexual abuse of a minor, this Court can conclude that Mr. Townsend has met his burden to show something special about the New York offense and in the words of Esquivel-Quintana, needs no more to prevail. Finally, before I reserve my time, I'd also like to note that at a bare minimum, in light of the precedential support for this position, the uniformity of the approaches in the other circuits, and the government's concession below that Mr. Townsend's interpretation was correct, at a bare minimum the rule of lenity comes into play here, and the government cannot carry its burden to show that its interpretation, its new interpretation, is unambiguously correct. So tell us what you would want us to do. What's the decreed language? What decree do you seek from us? This Court should reverse the district court's ruling that Townsend's prior offense was a controlled substance offense, vacate the sentence, and remand for resentencing. Thank you. May it please the Court. My name is David Kessler. I represent the United States. I want to touch on the kabuki theater point that Judge Cabranes made, not because I want to trivialize the guidelines, because we would never want to do that. But I think it speaks to the ultimate statutory interpretation question here, which is what does controlled substance mean in 4B1.2. Essentially, you could think about it. So you said statutory interpretation. We're interpreting the guidelines. Sorry, guidelines. But the canons of interpretation are going to be the same. Did Congress and the Sentencing Commission intend that the vast majority of controlled substance convictions for heroin, for cocaine, for marijuana, state-level narcotics convictions, be counted in the guidelines and leave a 3553A wiggle room for the one-in-a-million person who's convicted of HCG? Or did they intend to exempt all New York state convictions under a particular statute if there was any little difference that made that New York state or whatever state statute just a tiny bit broader in the controlled substance area? With regard to that, you mentioned the canons of construction. Yes. This is a statutory interpretation matter. Your friend across the podium there has referred to a Jerome presumption in which Congress is not presumed to incorporate state law into federal absent specific references. Does that apply here? No. The Jerome presumption applies if, I guess, if it's needed. Here, looking at the text of the statute as, for example, Judge Nathan did or Judge Irizarry did, the answer is clear, and it's clear for the following reason. I think there's been some focus on the briefs about the use of federal or state offense, but if you move forward in the sentence and get to controlled substance, that doesn't have a generic meaning at all. It's not like burglary. It's got a federal meaning. It has a federal meaning, but the Sentencing Commission knew how to incorporate the federal definition by putting a comma and adding the reference to the Controlled Substance Act, and Congress knew how to do that when it drafted numerous statutes like the INA, which comes up in some of these cases. But if the Sentencing Commission wanted controlled substance to be under federal or state law, wouldn't they have said it in this definition? They did say it. Well, I'm not so sure. They say an offense under federal or state law that prohibits the distribution of a controlled substance. They don't say an offense that prohibits the distribution of a controlled substance under federal or state law. That seems to me to be a very easy fix if what they intended was for the controlled substance to be under federal or state law. And the fact that controlled substance refers to the offense or under federal or state law refers to the offense and not to controlled substance, that seems to me to create a pretty significant ambiguity there. I think the statute could have been better drafted, but there may be a lot of provisions in the guidelines that could have been more clearly drafted. The federal or state modifies the definition of the offense, which includes controlled substance. And if we look at the drafting history, which I think the appellant's brief cites at one point, there's a recent 2016 report from the Sentencing Commission that discusses the history of 4B1.2. And I'm going to paraphrase a little bit. But essentially what happens is originally there's a reference, sort of a broad reference. Then there's an amendment to refer to federal statutes, you know, 21 U.S.C. X, Y, Z, comma, or substantially similar state offenses. Then that gets taken out. I believe I'm getting this right. And then the text gets changed again, but the Sentencing Commission explains that's to preserve the substantially similar because a simple reference to a number of statutes is unwieldy when what you're trying to define is controlled substance, where it's just a list of things. And I think substantially equivalent is really the right way to think about this here. That just makes sense. It doesn't make sense to create a guidelines category that includes heroin and cocaine, which everyone, including the sentencing guidelines, I imagine, would have believed to be a controlled substances offense, and then to assume that the Sentencing Commission meant to draft the guidelines to exempt all of those state convictions if HCG happened to be added to the New York State schedule. The Fifth, Eighth, and Ninth Circuits disagree with you, right? They disagree with me. Judge Nathan, Judge Irizarry, Judge Coons recently disagreed with the Fifth Circuit. Judge Weinstein agreed with them. There's a disagreement here. But that doesn't mean there isn't a better way to read the sentencing guidelines, and that's what we're advancing here, and that's what we're discussing. And I think, ultimately, it is just a question of the intent of the drafters, and this Court has a lot of experience interpreting statutes and guidelines provisions using the plain text the drafting history has laid out in things like the Sentencing Guidelines Report, and common sense. Is there a federal interest, though, in uniformity? If you use a federal definition of controlled substances, then you're more likely to get parity across the nation in a way that the sentencing guidelines were aimed at, aren't you? Well, there's a federal interest in uniformity. There's a federal interest in states being able to, I guess, federalism, and states being able to have their own statutes. You know, the interests go either way, and I resist a little bit the idea that the interpretation that Judge Irizarry adopted and has been adopted by a couple of other judges in this circuit is not uniform, because uniform, you know, the guidelines provision applies everywhere. Everyone is on notice that if you commit a controlled substance offense in a state, that will count under the guidelines. So there's a uniformity there as well. And, you know, if the sentencing guidelines are to be construed as a forcing mechanism to force New York State not to criminalize HCG, that just seems like a pretty unwieldy policy goal, and it seems a little far afield from the general concerns about uniformity that I think Taylor and Esquivel can kind of get to. But New York wouldn't have to uncriminalize HCG. It would just have to write a different statute, right? The reason that it's problematic here is because the statute has been found to be indivisible, right? They could write a divisible statute, couldn't they? They could. I mean, frankly, we argued before that the statute was divisible, that that argument is no longer available. But it's the same thing. You know, so to view the sentencing guidelines as a forcing mechanism to force state legislatures to redraft all their criminal statutes to comply, you know, to sort of meet up with the sentencing guidelines, just seems pretty far afield from the interpretation. But the other way you could accomplish that was just using the federal, the single federal list of controlled substances, right? And just kind of not treat the state list as, you know, just of no bearing. That's true. That would still have the effect. So if this statute said, you know, an offense under federal or state law, you know, involving a controlled substance, which is defined under 21 U.S.C., whatever the Controlled Substance Act provision is, that would still have the effect of eliminating entire states' worth of convictions for the sale of a controlled substance, where any controlled substance in the state didn't apply to the federal list, or making a state legislature simply adopt the federal list. I'm sorry. If the statute is indivisible. If the statute is indivisible. Right. I mean, not all statutes are indivisible. I mean, you took the position that the statute was divisible originally, right? So then a court could apply the modified approach. That position is no longer available. Well, I understand that. Have you waived it? Your friend says you've waived it. Have you waived it? I believe he says we've waived the other. I think everyone agrees that Harbin eliminates the argument that the statute is divisible. Right. Have we waived this argument? Right. No. The question before the court is, was Judge Irizarry's ruling correct as a matter of law? That's before the court. That was debated below. You know, we didn't adopt that or make that argument below. Frankly, that was a mistake, as we've said. Not a mistake because we should have made it. It was actually a mistake, just not focusing on the issue carefully enough. But it's not waived in the sense that there are waiver cases. The issue was pressed below. It was discussed below. And it's before this court. Could you address the other aspect of Judge Irizarry's ruling? Yes. Her reliance on the complaint room screening sheet, which I take it is, which I didn't see in the record. Is it there and I missed it? It never got to the record because there was no objection from defense counsel in any of the proceedings that, in fact, Mr. Townsend had sold heroin. But my understanding of the law and under Shepard is that had this been a divisible statute and had the court undertaken the guidelines analysis of trying to determine whether, you know, the heroin portion of the divisible statute applied, a complaint room screening sheet, which is essentially something an ADA writes up, you know, soon after someone is arrested, might or might not have been a Shepard document. But that's sort of away from what we're talking about. So I believe the district court might not have been correct had the district court's ruling been based entirely. I'm just thinking about, you know, if after calculating the guidelines correctly, the district court then had discretion to look broadly. Absolutely. So this gets back, I think, to Judge Cabranes' initial point, which is one possible outcome in this case, one I'm not advocating, is the court vacates the sentence. It goes back to the district court. The district court calculates the guidelines as the federal defenders advocate. And then the district court imposes the same sentence under 3553A, which would still be within the realm of the guidelines anyway, because the district court actually sentenced Mr. Townsend to 60 months on one count and 84 months on another count to run concurrently. So taking into account all the facts and circumstances, the district court could certainly apply the same sentence. It could also apply a different sentence. But the court would be free to do that. Yes. Why don't you go back to that? So let's assume for the argument the sentence is vacated and it's returned to the district court. Describe in detail what it would do and what it could do on remand. So my somewhat limited experience is that it would play out in the following. We'd have a new sentencing proceeding. There would presumably be an addendum to the pre-sentence report from the district court, which would not include, and Mr. Habib would be helpful in that respect. He would provide such a calculation. Sure. And the court would say, I have this guidelines calculation. Here it is. Terrific idea. And now I proceed with the 3553A analysis. And I see there's no one who's disputed that Mr. Townsend has a previous New York State conviction for selling heroin. That's not reflected adequately in my view in the criminal history and in the guidelines calculation. So I'm sentencing Mr. Townsend to, again, this is just one possibility. You know, I'm sentencing Mr. Townsend to 84 months or 60 months to run concurrently with 24 months or however a sentence is put together that reaches the same result. Not to be punitive or vindictive or anything like that, but because the district court genuinely believes in her experience in looking at the 3553A factors. But we don't know how the guidelines calculation affected the district court sentencing, right? I think as a technical matter, that's correct. And that is why we haven't argued harmless error here. I was sort of tempted to push the harmless error point, but I think that the precedent is fairly strong that the guidelines have to basically be right. Now, again, we think they're right, but if you disagree, I think it's hard to argue a kind of technical harmless error. I think based on the sentencing transcript, which the court certainly has, it is my reading of what Judge Irizarry said that she is likely to impose a similar sentence because she was animated, I think, by a belief that there's this technical, although potentially important exercise in calculating the guidelines, and then there are the facts of what actually happened. But at least conceptually, the thought process should be different if the guidelines are here or if they're here, right? Conceptually, the district judge may end up in the same place, but the thought process should be different. Yeah. I mean, certainly the court's precedent has laid out that you start with the guidelines and then you move on to the rest of 3553A. And again, that's why we're not pressing a harmless error here, because a district court should have the ability to reflect on a sentence with the correct guidelines. Our main point here is that the guidelines are correct, as they were used below. So assume for the argument that Mr. Habib prevails and obtains the sort of decree from us that he indicated he would wish, what would be the difference in guidelines computation? I'm blanking on the actual difference. I know that the guidelines range we had advocated in the plea agreement, which includes one prior felony, which would still apply here because of the New Jersey assault conviction, worked out to be something like 46 to 57 months. So again, I apologize. Mr. Habib will probably know that. I suspect so, but it's going to be something in that range. It's not going to be 84 months. It's going to be somewhere around five years, because my memory of the plea agreement was that it was the equivalent-ish of Mr. Townsend pleading to the 924C gun possession or possession of a firearm in furtherance, which he did not. The plea agreement allowed him not to plead to. So it should be around five years as a guideline. And that takes us to the rule of lenity. Yes. The rule of lenity doesn't apply here, either from a sort of common sense point of view. We can have an argument and a discussion about how to construe this guidelines provision given the 25-year history of Taylor and its progeny. But any person reading that statute would be on notice that a prior conviction for dealing heroin might implicate them. And on the more technical side, the fact that there are two ways to interpret a statute, even the fact that more circuits have said one thing than have said another, doesn't implicate the rule of lenity. There are circuit splits all the time on arguments about statutory interpretation. So, you know, the rule of lenity wouldn't apply simply because this circuit disagreed with the Ninth Circuit on a straight question of how to interpret a statute that, you know, we think there's a better way and a more sensible way to interpret it, but there could be another way to interpret it or there could be another way to draft it. But that's not the world of the rule of lenity. That's just a rule of a world where, you know, we can debate statutory interpretation as lawyers do all the time. Fine. We'll hear from Mr. Habib, including on the rule of lenity and how that would work and why it should work. Thank you. Thank you. Judge Cabranes, the correct guideline range deducting this prior is 84 to 105 months. As opposed to? As opposed to 121 to 151. Turning to the rule of lenity, Judge Cabranes, we have mustered robust textual support. And when I say textual support, the idea that the plain text of the guidelines is somehow interpreted without reference to applicable canons of construction is not correct. When a court reads the text of the guidelines, it does so in light of the applicable canons of construction. Those are, those are rules designed to assist a court in ascertaining what the plain text means. And those canons are quite clear and have not been effectively rebutted by the government. The Taylor canon, Esquivel-Quintana, and this court's decision in Savin. We also have contextual support because we know that the phrase, as Judge Velardo pointed out, the phrase under state law modifies offense. And the same phrase appears in the crime of violence provision of 4B1.2. And there, all agree that it does not signal the commission's intent to incorporate state law meanings of the constituent offenses in that provision. We also have precedential support. And again, we have the government's concession below, not just in this case, but in at least two other cases presenting the exact same issue that the guidelines term controlled substance means substance controlled under federal law. I appreciate that the government says today that that interpretation or that concession was a mistake, but if it's reasonable for the government to make that mistake, surely it's reasonable for Mr. Townsend to make the same mistake. So let me turn to the, the scope of, of a remand before I do, let me make one brief point, which is that the position Mr. Townsend is advocating here actually has quite modest scope. It only pertains to fifth degree, criminal sale, fifth degree criminal possession, and some rarely charged fourth degree subsections. And that's because as Joel, as Judge Velardo pointed out many statutes, including all of the higher degree, New York felony sale and possession statutes are divisible. And so in those cases, a district court can consult shepherd documents to ascertain the substance that's being sold. Similarly in the fifth, eighth and ninth circuits, all of those statutes were held to be divisible. So the idea that a ruling from Mr. Townsend here would kneecap the ability of the guidelines to take into account state convictions is not, is not supported, but turning to the scope of a remand, I do want to first resist the factual premise that Mr. Townsend sold heroin because there is no evidence in the record to support that claim as judge Carney elicited the complaint room screening sheet, which I have not seen, did not make its way into the record. The reason that Mr. Townsend didn't say anything about the sale of heroin is that it's not his burden. It's the government's burden to prove an aggravating fact related to sentencing by preponderance of the evidence. And so on remand, we would look at the complaint room screening sheet and whatever other evidence the government can muster. And we would argue about whether the district court could find by a preponderance of the evidence, his actual conduct. And then I suspect my colleague in the trial court would make a number of arguments along the lines I suggested to judge Cabranes earlier about the constitutional concerns raised by a judicial finding of fact to enhance a sentence about the practical obstacles to Mr. Townsend, who is no longer empowered to investigate 14 year old conduct to ascertain what it is that he sold and about the equitable consequences of tagging Mr. Townsend with the sale of a substance that whose nature he had no incentive to contest at the original guilty plea proceeding in state court. And then assuming that the judge makes an adverse finding, we would have an argument about why, if a variance and upward variance is in fact imposed, why that variance was reasonable under this court's precedence, including Caveira. And if the district court were to vary, if the district court were to impose an above guideline sentence. So all of those things are putting the cart before the horse. These are all issues to be worked out on remand. These are all arguments to be made to the district judge in the first instance. The correct disposition here is to follow the uniform position of the other circuits. And at a minimum hold that the guideline is ambiguous and to vacate and remand. Thank you. Thank you very much. We'll reserve decision and we are adjourned.